```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF TEXAS
                         DALLAS DIVISION
```

ASPEX EYEWEAR, INC., et al.,       §
                                   §
     Plaintiffs-                   §
     counterdefendants,            §
                                   §  Civil Action No. 3:02-CV-0634-D
VS.                                §
                                   §
E'LITE OPTIK, INC.,                §
                                   §
     Defendant-                    §
     counterplaintiff,             §

                       MEMORANDUM OPINION
                         AND ORDER

Defendant-counterplaintiff E'Lite Optik, Inc. ("E'Lite") moves for partial summary judgment on plaintiffs' patent infringement claim. Because the court's construction of United States Patent No. RE37 545E ("the '545 patent") settles as a matter of law that both of E'Lite's accused products did not infringe claims 18 and 23 of the '545 patent, the court grants E'Lite's motion to the extent plaintiffs' infringement suit is premised on either claim 18 or 23.

                                I

In 2002 plaintiffs-counterdefendants Aspex Eyewear, Inc. and Contour Optik, Inc. (collectively, "Aspex") sued E'Lite for infringement of the '545 patent.[1] The court stayed this lawsuit in

---

[1] For the background on the litigation between the parties and a description of the inventions at issue, *see Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2007 WL 2984673, at *1 (N.D. Tex. Oct. 12, 2007) (Fitzwater J.); *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2002 WL 1592606, at *1-*2 (N.D. Tex. July 17, 2002) (Fitzwater, J.); *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2002 WL 1751381, at *1-*3 (N.D. Tex. Apr. 4, 2002) (Fitzwater, J.); and *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2001 WL 204775, at *1 (N.D. Tex. Feb.

2003, and when the stay terminated in 2006, Aspex filed its opening claim construction brief, requesting that the court construe the disputed claim limitations of claims 18 and 23 of the '545 patent. Aspex restricted its infringement suit to these claims of the '545 patent, stating that "[t]o narrow the issues for trial and facilitate this claim construction process, Plaintiffs are asserting only claims 18 and 23 against E'Lite." Ps. Claim Constr. Br. 3.

In October 2007 the court filed an opinion construing claims 18 and 23 of the '545 patent. *See Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2007 WL 2984673, at *2, *18 (N.D. Tex. Oct. 12, 2007) (Fitzwater J.) ("*Aspex IV*"). Based on *Aspex IV*, E'Lite moves for partial summary judgment, contending as a matter of law that both accused products—the "Smart Clip" frames and the "MacEye" frames—do not infringe claims 18 and 23. Aspex concedes in response that, based on the court's construction of the '545 patent in *Aspex IV*, summary judgment is proper against it with respect to its allegations that E'Lite's "Smart Clip" frames infringed claims 18 and 23 of the '545 patent.[2] Thus the only issue in this motion

---

27, 2001) (Fitzwater, J.).

[2]Aspex requests that the court enter judgment against it without prejudice to its reinstituting its infringement action under claims 18 and 23 if the Federal Circuit reverses the claim construction made in *Aspex IV*. The court declines this request. The correct procedure is for the court to enter judgment dismissing the infringement claim *with* prejudice. Then, if the Federal Circuit disagrees with this court's claim construction and that

is whether summary judgment is proper with respect to Aspex's infringement allegations directed at E'Lite's "MacEye" frames.

II

"Summary judgment is generally appropriate where, after making all inferences in favor of the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1374 (Fed. Cir. 2007) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "'Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents.'" *Id.* at 1374-75 (quoting *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005)).

E'Lite does not argue that its "MacEye" frames do not contain all the limitations of claim 18 or claim 23 of the '545 patent. Rather, E'Lite contends that it is entitled to summary judgment of noninfringement concerning its "MacEye" frames because it has neither made nor sold "MacEye" frames since 1998, and the effective date of the '545 patent is February 12, 2002, the date the reissue

---

disagreement results in reversal, the judgment of dismissal will also be reversed and Aspex will be able to pursue its infringement claims in accordance with the Federal Circuit's opinion and mandate.

patent was granted. E'Lite therefore maintains that even if the "MacEye" frames contain all of the limitations of claim 18 or 23, its production and sales of the "MacEye" frames could not have infringed claims 18 and 23 of the '545 patent because the reissue claims were not effective until E'Lite ceased any potentially infringing activity concerning the "MacEye" frames. Alternatively, E'Lite posits that it is entitled to summary judgment based on the defense of intervening rights.

In support of its motion for summary judgment, E'Lite submits a declaration of Greg Smith, an officer and director of E'Lite, who avers that E'Lite

> has not made, used, sold, offered for sale, or imported any product whatsoever since February 12, 2002 that used horizontally oriented magnets secured to the ends of arms or magnets that engage along a vertical polar axis and are secured to the ends of arms. All products of that type (arm-mounted magnets) sold by E'Lite Optik since that date have had magnets that are vertically oriented and horizontally engage.

D. App. 1-2. Based on this declaration and the court's construction of the '545 patent that both claims 18 and 23 contain magnetic members with horizontal orientation, *Aspex IV*, 2007 WL 2984673, at *23, E'Lite contends that it is entitled to summary judgment concerning its "MacEye" frames.

Aspex does not rebut by evidence or argument the assertion that E'Lite did not engage in any infringing activity with respect to its "MacEye" frames after February 12, 2002, the day the '545

patent was issued.[3]  Rather, Aspex's sole basis for opposing E'Lite's motion for partial summary judgment is that claim 18 of the '545 patent is substantially identical to claim 2 of the '545 patent's predecessor, United States Patent No. 5,568,207 ("the '207 patent").  Therefore, Aspex maintains that under the first paragraph of 35 U.S.C. § 252, the effective date of claim 18 is October 22, 1996, the date the '207 patent was issued.  Aspex contends that there is a genuine issue of material fact whether the "MacEye" frames infringed claim 18 of the '545 patent, even if no infringing activity occurred after February 12, 2002.

III

A

The first paragraph of 35 U.S.C. § 252 provides:

> The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are substantially identical, such surrender shall not affect any action then pending nor abate any cause of action then

---

[3] Because Aspex does not proffer rebuttal evidence to E'Lite's contention that it did not infringe the '545 patent through its "MacEye" frames after February 12, 2002, E'Lite's alternative ground for summary judgment based on intervening rights is irrelevant. *See Fortel Corp. v. Phone-Mate, Inc.*, 825 F.2d 1577, 1581 (Fed. Cir. 1987) ("It being undisputed that no allegedly infringing acts occurred after the date of the reexamination certificate, the doctrine of intervening rights is irrelevant in this case.").

> existing, and the reissued patent, *to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.*

(emphasis added). "Applying [this paragraph of] § 252, when the reexamined or reissued claims are identical to those of the original patent, they shall 'have effect continuously from the date of the original patent.'" *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997). Conversely, "[u]nless a claim granted or confirmed upon reexamination is identical to an original claim, the patent can not be enforced against infringing activity that occurred before issuance of the reexamination certificate." *Id.*

Because Aspex does not oppose E'Lite's evidence that E'Lite did not engage in any infringing activity with respect to its "MacEye" frames *after* the '545 patent issued, E'Lite's summary judgment motion hinges on whether claim 18 of the '545 patent is substantially identical to claim 2 of the '207 patent. If it is, then the effective date of claim 18 is October 22, 1996, the date the '207 patent issued, and summary judgment should be denied. But if claim 18 is not substantially identical to claim 2 of the '207 patent, summary judgment is warranted because the effective date of claim 18 is February 12, 2002, and Aspex concedes that no infringing activity took place after this date with respect to E'Lite's "MacEye" frames.

B

"'Identical' does not mean verbatim, but means at most without substantive change." *Id.* (citing *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 827-28 (Fed. Cir. 1984)). "Moreover, the court has stated that 'it is the scope of the claim that must by identical, not that the identical words must be used.'" *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 741 (Fed. Cir. 1993) (quoting *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1115 (Fed. Cir. 1987)). "A determination of whether the scope of a reissue claim is identical with the scope of the original claim is a question of law[.]" *Id.* (citing *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037 (Fed. Cir. 1987)). "If substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate." *The Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998).

C

Claim 2 of the '207 patent is a dependent claim that depends on claim 1. Thus it "incorporates by reference all of the limitations of the claim from which it depends." *Bloom Eng'g*, 129 F.3d at 1250. In its response brief, Aspex compares the limitations of claim 18 of the '545 patent and claim 2 of the '207 patent in support of its contention that these two claims are substantially identical. Even assuming that the respective

limitations in the two claims that Aspex analyzes are substantially identical, Aspex's comparison ignores one material difference between claim 18 of the '545 patent and claim 2 of the '207 patent: the orientation of the magnetic members.[4]

In *Aspex IV* the court construed claim 18's reference to "magnetic members" as requiring that they possess horizontal orientation. *Aspex IV*, 2007 WL 2984673, at *6 ("The court holds that the '545 patent's specification, its references to magnetic orientation in claims other than claim 18, and its prosecution history support the construction that claim 18 is limited to magnetic members with horizontal orientation."). The court explained what it meant by magnetic members possessing horizontal orientation:

> When magnets with flat surfaces are engaged, the juncture of the magnetic members' surfaces forms a plane. When the magnetic members are oriented horizontally, this plane, if extended, intersects perpendicularly with the plane of the lens spectacles, which form a vertical plane when the eyeglasses are worn. When magnets are engaged so that they are oriented horizontally, the action of becoming engaged (the movement of engagement) occurs along an axis that is perpendicular to the plane of the magnetic members' orientation. Horizontally oriented magnets therefore engage vertically.

*Id.*

In *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2001 WL 204775

---

[4]Thus the court need not compare other limitations of these two claims.

(N.D. Tex. Feb. 27, 2001) (Fitzwater, J.), the court construed claims 1 and 2 of the '207 patent. *Id.* at *1. E'Lite argued that "the '207 patent claims cover only a top-mounted design, not a back-mounted design." *Id.* at *3. The court interpreted E'Lite's proposed construction as limiting the orientation of the invention's magnetic members. *Id.* at *4 ("E'Lite . . . uses [the term back-mounted] to suggest vertical instead of horizontal magnet engagement.").[5] The court rejected E'Lite's proposed construction, holding that the magnetic members of claims 1 and 2 of the '207 patent are "not restricted to horizontally mated magnets. To the extent that E'Lite means 'back-mounted' to refer to the placement of the magnets, the court declines to adopt such an interpretation." *Id.* That the court's 2001 construction of the '207 patent rejected construing claim 2 as limited to possessing magnetic members with horizontal orientation is confirmed by Aspex's arguments concerning the construction of the '545 patent. In support of its contention that the magnetic members in claim 18 of the '545 patent are not limited to horizontal orientation, Aspex pointed to this court's rejection of that argument with respect to the '207 patent: "The language of claim 18 does not use the word

---

[5]Although the court used the phrase "horizontal magnetic engagement," the context of this statement (including the next sentence cited in this opinion) clearly indicates that it meant "horizontal orientation." The court had not yet had occasion to distinguish between "magnetic orientation" and "magnetic engagement."

'horizontal', or otherwise restrict the invention to 'horizontally secured' magnetic members . . . . This Court came to the same conclusion in construing the disclosure and claims of the predecessor '207 patent . . . in *Aspex Eyewear, Inc. v. E'lite Optik, Inc.*, 2001 WL 204775 (N.D. Tex. 2001)[.]" Ps. Claim Constr. Reply 2. Thus Aspex's own reasoning acknowledges that, if the magnetic members of claim 18 of the '545 patent are limited to horizontal orientation, as the court held that they are, *Aspex IV*, 2007 WL 2984673, at *23, the scope of claim 18 of the '545 patent is not the same as that of claim 2 of the '207 patent, because the former's magnetic members are limited to horizontal orientation while the latter's do not contain this limitation.

Because claim 18 of the '545 reissue patent contains a limitation not present in claim 2 of the original '207 patent—that the magnetic members possess horizontal orientation and thus engage vertically—and this limitation affects the scope of the claims, these two claims are not substantially identical. *See Laitram Corp.*, 163 F.3d at 1348 (holding that original claim was not substantially identical to reissue claim because original claim covered printer that generated "*any* quality of alphanumeric characters" while reissue claim covered printer that generated a particular kind of alphanumeric characters ("*type quality* alphanumeric characters")); *Bloom Eng'g*, 129 F.3d at 1251 (holding that original claims were not substantially identical to reissue

claims because "[t]he amendment [after reexamination] narrowed the claims to exclude an injected gas stream that includes combustion air, and to require a separate combustion air stream.").

Thus the effective date of claim 18 of the '545 patent is February 12, 2002, the date that the '545 patent issued. Therefore, E'Lite's "MacEye" frames did not infringe claim 18 of the '545 patent as a matter of law.

\* \* \*

The court grants E'lite's November 27, 2007 motion for partial summary judgment and holds that neither E'Lite's "Smart Clip" frames nor its "MacEye" frames infringed claim 18 or 23 of the '545 patent.

**SO ORDERED.**

April 3, 2008.

                                              _____
                                              SIDNEY A. FITZWATER
                                              CHIEF JUDGE